**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240667-U

Order filed December 9, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| DOROTA HEIMER, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0667 |
| | ) | Circuit No. 22-LA-522 |
| ROUNDY'S ILLINOIS, LLC, d/b/a Mariano's, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Timothy J. McJoynt, |
| | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The trial court did not err in granting in part and denying in part defendant's motion to strike portions of plaintiff's response to defendant's motion for summary judgment. The trial court did not err in granting summary judgment in defendant's favor. Affirmed.

¶ 2    Plaintiff, Dorota Heimer, filed a complaint seeking financial compensation after her shopping cart allegedly became stuck in a pothole in defendant's, Roundy's Illinois, LLC, d/b/a Mariano's, parking lot, causing her to fall and become injured. Plaintiff appeals the trial court's partial grant of defendant's motion to strike portions of plaintiff's response to defendant's motion

for summary judgment, as well as the court's grant of summary judgment in defendant's favor. For the reasons set forth below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On June 14, 2022, plaintiff, representing herself, filed a document entitled "Motion for financial compensation for the health impairment suffered[,]" (complaint) wherein she requested damages in connection with injuries she sustained during a fall in the parking lot of defendant's store. Specifically, plaintiff alleged that on June 21, 2020 (Father's Day), she purchased groceries from the Elmhurst Mariano's and attempted to transport them through the parking lot to her vehicle with a metal shopping cart. Before she reached her vehicle, however, the wheels of the shopping cart fell into a crack in the parking lot, causing it to stop suddenly. Plaintiff alleged that, as a result, she fell and hit her "leg-knee and tibia" against the shopping cart. She described "the bad surface of the parking lot, and the gaps, grooves of cracking in the pavement [that] were wide enough for the wheels of the cart to easily fall into it" but explained that the cracks were difficult to spot and avoid.

¶ 5        Plaintiff continued that she returned to the store "a few days" later to photograph the area of the parking lot where she fell. At that time, she used a ruler to measure the gap in the surface of the parking lot. Plaintiff claimed that, as a result of her injuries, weather changes caused "pain in [her] knee and tibia of [her] ankle leg" and that therapies, ointments, and medication had been ineffective. Plaintiff sought $95,000 in damages "for the damage suffered not only for health, but also for stress and losses" as well as for compensation "for further treatments."

¶ 6        Several exhibits were attached to the complaint. The first exhibit was plaintiff's Mariano's receipt from the day of the alleged incident. The second exhibit was a June 26, 2020, after-visit summary from Elmhurst Clinic noting that plaintiff was seen for "[i]njury." The third exhibit was

2

a pharmacy receipt and medication list evidencing plaintiff's "Amoxicillin-Pot Clavulanate" prescription. The fourth exhibit was a Mariano's receipt dated June 27, 2021. The fifth exhibit was a letter dated September 10, 2020, from plaintiff to the "Managers of Mariano's Store" explaining that the parking lot "has pretty destroyed surface, especially in the front of the store." She stated that it was "stressful, inconvenient and irritating" to have to "go around" the cracks and holes. The sixth exhibit was a letter dated June 27, 2021, from plaintiff to "Store Management of Mariano's" alerting the recipient that the damage to the surface of the parking lot remained. Plaintiff noted that there was "still deep damage to the pavement, holes, cracks of various sizes, which are a big nuisance and an obstacle for customers to move with shopping carts from Mariano's store to the car." She stated that she was a regular customer and was "forced to endure these nuisances and obstacles." After expressing frustration that she did not receive a response to her first letter, plaintiff disclosed in the letter her June 21, 2020, fall, which she described as painful and resulting and "bruising of [her] leg, tibia of the left leg and hitting [her]self in the abdomen." She requested compensation "for the pain and health damage suffered: contusion of the leg, left tibia, abdomen, leg and abdominal pain longer time, permanent disfiguring white spots on the left leg, immobilization of body functions, physical fitness for a period of time." Exhibit seven was a medication list dated May 24, 2022, evidencing a prescription for ibuprofen to be taken "as needed for [p]ain." Exhibit eight was a medical referral to "physiatry-internal" and a May 24, 2022, after visit summary from Dr. Nathaniel Pae, which indicated that plaintiff's "[p]ain of left lower extremity and [h]istory of injury" were addressed on that date.

¶ 7 In response, defendant denied the allegations and asserted five affirmative defenses, including contributory or comparative negligence, plaintiff's actions being the sole proximate

3

cause of her injuries, others' actions being the proximate cause of plaintiff's injuries, failure to mitigate, and assumption of risk.

¶ 8    On November 15, 2022, plaintiff filed several documents, including her answers to the written interrogatories propounded by defendant. She also filed several undated black and white photographs depicting a parking lot, as well as June 26, 2020, May 24, 2022, September 8, 2022, and September 22, 2022, progress notes following doctor's visits. She included an October 25, 2022, spinal MRI report, November 8, 2022, knee x-ray report, and November 8, 2022, after-visit summary from physical therapy. Finally, plaintiff included several medical bills. Plaintiff subsequently filed separate exhibits containing additional medical bills, a December 16, 2022, spinal x-ray report, and photographs of the Elmhurst Mariano's parking lot dated December 31, 2022. On March 27, 2023, plaintiff filed an exhibit containing the results of a polygraph she voluntarily took without prompting from defendant or the court.

¶ 9    On January 24, 2024, defendant filed a motion for summary judgment, arguing that the defect in the parking lot was *de minimis* and, therefore, plaintiff could not prove any facts to support the allegation that defendant breached a duty of care owed to plaintiff or that plaintiff's injury was foreseeable. Defendant attached photographs of the pothole that were taken by plaintiff. One photograph depicted a ruler set inside the pothole along with a wheel of a shopping cart, and the ruler showed that the depth of the pothole was less than one inch. Another photograph depicted the ruler lying flat on the ground beside the pothole and showed that it exceeded one foot wide. Defendant contended that because the defect in the parking lot was *de minimis* and there no aggravating factors were present, it was entitled to summary judgment.

¶ 10    Attached as an exhibit was, *inter alia*, the transcript of plaintiff's discovery deposition. Plaintiff testified in relevant part that the accident occurred around noon on a "[p]erfect sunny day"

4

and described the parking lot as being "very busy." She explained that she was wearing flat, leather shoes when she fell into the hole and that the hole was "two, three, four feet long" and "over six inches" deep. She stated that, when her shopping cart came into contact with the hole, the cart "stopped and pushed [her] right back hitting abdomen and the leg, and [she] went down." She further testified that she did not know how long the pothole had been in the parking lot prior to her fall and that she had not reported the pothole beforehand. She confirmed that she also did not report the pothole to anyone inside the store after she fell but that she sent the letters.

¶ 11     Plaintiff subsequently filed a motion to dismiss defendant's motion for summary judgment, which the court construed as a response to the motion for summary judgment. In her introduction, plaintiff noted that she was the mother of a developmentally delayed child, a breast cancer patient, and a victim of domestic violence. Plaintiff explained, *inter alia*, that she did not see the hole in the parking lot prior to falling because it was unmarked and her cart was filled with groceries. Plaintiff denied that the hole was a *de minimis* defect in the parking lot. She claimed that, following the incident, she developed complex regional pain syndrome, the treatment for which is lifelong. She argued that defendant violated its duty of care and attached photographs of the repairs made in the parking lot after the incident, opining that this demonstrated that defendant "unwittingly admitted" that plaintiff's claim was valid. Attached to her response were photographs of the parking lot from 2020, 2022, and 2024, as well as a news article regarding the replacement of the metal shopping carts with a lighter, plastic alternative at Mariano's in Arlington Heights. Also attached was an October 18, 2022, letter from plaintiff to a code enforcement officer with the City of Elmhurst wherein she described the incident and her injuries and requested assistance. She also included photographs of additional, unrelated potholes in the parking lot.

¶ 12    In response, defendant filed a motion to strike portions of plaintiff's response. Specifically, defendant sought to strike plaintiff's polygraph results, the photographs of the parking lot from 2022 and 2024, the article regarding the replacement of shopping carts at the Arlington Heights Mariano's, medical bills, and the letter to the City of Elmhurst. Defendant further argued that plaintiff's statements regarding her developmentally delayed child and her status as a breast cancer patient and domestic violence victim were "highly prejudicial to [defendant] in that they attempt to elicit sympathy towards Plaintiff and have no bearing on the facts of the case."

¶ 13    On April 29, 2024, the court granted in part and denied in part defendant's motion to strike. The court denied the motion as it related to defendant's medical bills and the letter to the City of Elmhurst. The court struck all polygraph materials as inadmissible. The 2022 and 2024 photographs of the Mariano's parking lot were also stricken, as evidence of post-remedial measures is inadmissible. The court continued that plaintiff's comments regarding her child, breast cancer, and domestic violence were stricken as being prejudicial and immaterial. Finally, the article related to the Arlington Heights shopping carts was stricken because it was "a post-accident article and *** irrelevant."

¶ 14    On May 10, 2024, the court conducted a hearing on defendant's motion for summary judgment. The court found that the *de minimis* rule was "in play" because "[t]he defect was shallow, small, visible, part of a very large parking lot maintained by the defendant." The court noted that case law supported the conclusion that the measurement of the pothole showed it was *de minimis*, thereby rendering the issues of foreseeability and proximate cause moot. The court also observed that, while plaintiff claimed the pothole was long, wide, and deep, and therefore not *de minimis*, plaintiff failed to cite to authority to support her position. Moreover, the court found that the pleadings failed to demonstrate notice or willful disregard of an alleged defect to sustain

6

a claim for premises liability. Accordingly, the court granted defendant's motion for summary judgment.

¶ 15    On June 3, 2024, plaintiff filed a motion to reconsider summary judgment. First, plaintiff argued that her polygraph results were improperly stricken from the record. She further stated that the court was biased in its handling of the evidence. Second, she listed several "aggravating circumstances," as follows: (1) the pothole was more than two inches deep; (2) the pothole was in a high-traffic area; (3) the pothole was in a commercial neighborhood; (4) the pothole was outdoors; (5) the incident occurred on Father's Day in 2020, and there was therefore increased traffic in the parking lot; (6) the pothole was unmarked; (7) the parking lot was not properly serviced; (8) plaintiff was pushing a heavy shopping cart filled with groceries and could not see the pothole as she walked through the parking lot; and (9) the shopping cart was "heavy, metal, awkward, unwieldy and inoperable." Third, plaintiff contended that the photographs that were stricken by the court were "very important and key evidence." Fourth, plaintiff argued, again, that the pothole was not *de minimis* and, instead, was "a large hole, a hole[] very wide and deep, into which the wheels of the shopping cart, pushed by the Plaintiff, collapsed." She contended that her allegations were sufficient to sustain a claim for negligence and lack of maintenance. Fifth, plaintiff challenged the court's striking of the prejudicial information. Plaintiff's remaining arguments either reiterated the arguments she set forth in the earlier litigation or are irrelevant to the issues raised on appeal. Following a hearing, the court denied plaintiff's motion.

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    Initially, we note that plaintiff proceeds on appeal *pro se* and that her arguments are set forth in several sections of her opening brief, including the "issue presented for review," "statement

7

of facts," and "argument." Notwithstanding, we have distilled her central arguments as follows: (1) certain evidence was improperly stricken from the record, including photographs; polygraph results; medical documents; plaintiff's letters notifying defendant and the City of Elmhurst about the condition of the parking lot; information regarding cancer, domestic violence, and plaintiff's child's developmental delays; and the article regarding the replacement of shopping carts at another Mariano's location, and (2) summary judgment was improper because a genuine issue of material fact existed regarding whether the pothole was a *de minimis* defect.

¶ 19                                      A. Motion to Strike

¶ 20        Plaintiff challenges the court's ruling on defendant's motion to strike portions of plaintiff's response to defendant's motion for summary judgment.

¶ 21        We first observe that, despite plaintiff's assertions to the contrary, the court did *not* strike her September 10, 2020, or June 27, 2021, letters to defendant or her October 18, 2022, letter to the City of Elmhurst. In fact, the court did not address the two letters to defendant at all, as defendant did not request that they be stricken. Instead, the court's consideration was limited to plaintiff's letter to the City of Elmhurst, as that is the only letter that was included in defendant's motion to strike. However, the report of proceedings, as well as the written order, demonstrate that the court denied defendant's motion to strike the City of Elmhurst letter. Similarly, the record shows that the court denied defendant's request to strike plaintiff's medical bills from the record. As such, our analysis is limited to whether the court properly struck photographs of the Mariano's parking lot from 2022 and 2024; the article discussing the replacement of shopping carts at the Arlington Heights Mariano's; plaintiff's polygraph results; and plaintiff's statements regarding cancer, domestic violence, and her child's developmental delays.

¶ 22    A motion to strike within the context of a motion for summary judgment is reviewed *de novo*. *Asset Recovery Contracting, LLC v. Walsh Construction Company of Illinois*, 2012 IL App (1st) 101226, ¶ 101.

¶ 23                    1. Photographs of Parking Lot and Replacement of Shopping Carts

¶ 24    We simultaneously address plaintiff's arguments pertaining to the photographs of the parking lot and the article discussing the replacement of shopping carts. First, plaintiff argues that all the photographs that she submitted of the pothole were stricken from the record. However, the April 29, 2022, order indicates that only the photographs taken in 2022 and 2024 were stricken. Plaintiff continues that the 2022 and 2024 photographs show subsequent repairs to the parking lot and, therefore, defendant "unwittingly admitted" plaintiff's claims. Second, plaintiff contends that the replacement of shopping carts demonstrates that defendant was aware that the "carts were not working properly."

¶ 25    Generally, "evidence of post-accident remedial measures is not admissible to prove prior negligence." *Bulger v. Chicago Transit Authority*, 345 Ill. App. 3d 103, 111 (2003). Our supreme court has provided several reasons for this exclusionary rule: "(1) a strong public policy favors encouraging improvements to enhance public safety; (2) subsequent remedial measures are not considered sufficiently probative of prior negligence, because later carefulness may simply be an attempt to exercise the highest standard of care; and (3) a jury may view such conduct as an admission of negligence." *Id.* (citing *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300-03 (1995)).

¶ 26    While certain exceptions to this rule exist, plaintiff has not argued that any apply. Therefore, any evidence related to repairs or replacements that defendant made after plaintiff's fall

were properly stricken from the record, including the 2022 and 2024 photographs and the article discussing the 2021 replacement of shopping carts at the Arlington Heights Mariano's.

¶ 27                                                    2. Polygraph Results

¶ 28            In arguing that the court improperly barred her polygraph results, plaintiff contends that these tests are widely used and that her passing score proves her credibility. She cites, without analysis, several out-of-state cases and notes various law enforcement agencies that utilize polygraphs.

¶ 29            In Illinois, however, it is well-established that polygraph evidence is not admissible, even by stipulation of the parties. *In re Marriage of Turzitti*, 161 Ill. App. 3d 822, 824-25 (1987). Doubts as to the polygraph's reliability, and the accompanying risk that a fact-finder might find the results conclusive and abandon its fact-finding role, underly this rule. See *People v. Szabo*, 94 Ill. 2d 327, 362 (1983). Accordingly, we affirm the court's striking of plaintiff's polygraph results.

¶ 30                        3. Cancer, Domestic Violence, and Developmental Delays

¶ 31            Plaintiff argues that the fact that she has been subject to domestic violence, is a breast cancer patient, and has a child with developmental delays is not prejudicial and should not have been stricken from the record. Rather, she contends these facts illustrate "what will happen to the [p]laintiff[] if she is forced to undergo surgery on her spine and does not receive the compensation due to her and [is] forced to use a wheelchair."

¶ 32            Initially, we agree with the court's assessment that these factors are prejudicial in that they are intended to elicit sympathy and are otherwise immaterial. Plaintiff's argument on appeal that these factors are relevant because they explain "what will happen" is otherwise undeveloped. "Bare contentions *** do not merit consideration on appeal and are deemed waived. A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive

10

arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). Plaintiff's argument on this point is underdeveloped and lacks citation to any supporting authority and is therefore waived.

¶ 33          We affirm the April 29, 2024, order.

¶ 34                                    B. Summary Judgment

¶ 35          Plaintiff next argues that summary judgment was improper because a genuine issue of material fact existed as to whether the pothole constituted a *de minimis* defect in the parking lot.

¶ 36          Pursuant to section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2022)), summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law." Our supreme court detailed the proper analysis as follows:

> "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, and affidavits strictly against the movant and liberally in favor of the opponent. A trial issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw difference inferences from the undisputed facts." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162-63 (2007).

We review rulings on summary judgment *de novo*. *Giannetti v. Angiuli*, 263 Ill. App. 3d 305, 306-07 (1994). We may affirm on any ground supported by the record. *DiCosola v. Ryan*, 2015 IL App (1st) 150007, ¶ 8.

11

¶ 37        Although she does not label her cause of action, plaintiff alleges that a dangerous condition existed in defendant's parking lot. Accordingly, we consider the elements of a premises liability claim.

"Ordinary negligence requires proof of (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately caused by the breach. [Citation.] However, a claim for premises liability requires proof of the three elements of ordinary negligence, *plus* proof that (1) there was a condition on the property that presented an unreasonable risk of harm, (2) the defendant knew or reasonably should have known of the condition and the risk, and (3) the defendant could reasonably have expected people on the property would not realize, would not discover, or would fail to protect themselves from the danger." (Emphasis added.) *Id.* ¶ 22.

¶ 38        A landowner has a duty to maintain the premises in a reasonably safe condition. *St. Martin v. First Hospitality Group, Inc.*, 2014 IL App (2d) 130505, ¶ 11. In determining whether a duty exists, the court considers "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* ¶ 12 (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436-37 (2006)).

¶ 39        The *de minimis* rule, which originated in cases involving municipalities, established that "[m]unicipalities do not have a duty to keep all sidewalks in perfect condition at all times." *St. Martin*, 2014 IL App (2d) 130505, ¶ 13 (quoting *Gillock v. City of Springfield*, 268 Ill. App. 3d 455 (1994)). Accordingly, a municipality does not have a duty to repair *de minimis* defects in sidewalks. *St. Martin*, 2014 IL App (2d) 130505, ¶ 13. The application of this rule has been extended to private owners and possessors of land, as well as to defects in parking lots. *Id.*; *Barrett*

12

*v. FA Group, LLC*, 2017 IL App (1st) 170168. "If a defect is such that a reasonably prudent person would not anticipate some danger to persons walking upon it, it is considered *de minimis* and is not actionable." *Morris v. Ingersoll Cutting Tool Co.*, 2013 IL App (2d) 120760, ¶ 12. "Whether a height variance \*\*\* is *de minimis* depends on all of the pertinent facts, and there is no simple standard to separate *de minimis* defects from actionable ones." *St. Martin*, 2014 IL App (2d) 130505, ¶ 14.

¶ 40    Absent aggravating circumstances, a vertical displacement of less than two inches is considered *de minimis*. *Id.* Conversely, "If there is evidence of an aggravating circumstance, whether the defendant owed to duty to the plaintiff is a question of fact. [Citation.] Where the plaintiff fails to provide evidence that such a circumstance exists, summary judgment is appropriate." *Id.*

¶ 41    Various cases have explored aggravating circumstances that might defeat the *de minimis* rule. In *Barrett*, 2017 IL App (1st) 170168, ¶¶ 14, 32, a pedestrian was crossing a parking lot when the heel of her shoe became stuck in broken asphalt within a pothole that was less than two inches deep, causing her to jolt forward and fall. In reversing summary judgment, the appellate court initially observed that the height differential was not the alleged cause of the accident; instead, the pedestrian's shoe became stuck in loose pavement within the pothole. *Id.* ¶ 33. The court continued that, for this reason, cases where an injury was caused by a height deviation were "of limited usefulness." *Id.* The court set forth several aggravating circumstances to consider, including whether the defect was near a business, rendering it reasonably foreseeable that the area would be traveled by pedestrians, as well as the mechanics of the fall. *Id.* ¶ 34 (citing *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601, 609 (1957)). Specifically, the court noted that the injury occurred at night in an area with dim lighting; the large area of the defect (several feet long and wide), despite its

13

minimal depth; the defect was in an area with no designated parking spaces and had an increased likelihood to be encountered by a pedestrian, particularly when walking across a crowded parking lot; and the defect contained broken pieces of asphalt. *Id.* ¶ 35.

¶ 42 In *Butler v. Walmart, Inc.*, 2021 WL 2853367, *1 (N.D. Ill. 2021) (a federal district court case applying Illinois law), a customer fell and was injured after her shopping cart became stuck in a crack in the store's parking lot. The customer filed a complaint for negligence and testified that the crack was "pretty long" and deep enough for the wheels to become stuck. *Id.* at *1-2. Defendant filed a motion for summary judgment, arguing, in part, that the defect in the parking lot was *de minimis*. *Id.* at *2, 4. Analogizing the facts to *Barrett*, the court observed that the height differential in the defect was "of secondary importance to its width and potential to cause someone or something crossing it to become stuck." *Id.* *5. The court noted the customer's uncontradicted testimony that the defect was wide enough for the wheel to become stuck, that the videos and photographs showed the defect was "long." *Id.* Given the location of the crack between in the aisle between rows of parked cars, the court concluded that it was reasonably foreseeable that a customer would roll his or her cart over the defect and that its location would make it difficult to avoid. *Id.* The court also found that it would be reasonable for the jury to consider the commercial area, that customers would be looking for oncoming traffic, and that their vision could be restricted by their carts and the merchandise inside. *Id.* The court denied summary judgment. *Id.*

¶ 43 Here, although plaintiff did not label the facts surrounding the incident as "aggravating factors" until she filed her motion to reconsider, she nonetheless presented evidence that implicitly fell within this category. Specifically, similar to *Barrett* and *Butler*, plaintiff's allegations did not rest solely on the depth of the pothole in the parking lot. Rather, she emphasized the width of the pothole and that both front wheels of the cart were able to fall inside. These allegations were

14

supported by photographs. Although the depth of the pothole was the focus of much discussion, it seems to be of secondary importance to its width given the mechanics of how plaintiff allegedly fell. See also *West v. City of Hoopeston*, 146 Ill. App. 3d 538, 542 (1986) ("We agree that the width *and* depth of the allegedly defective area should be considered in determining whether that area is of a minor, nonactionable nature.") (Emphasis added.). Plaintiff further explained that her view of the parking lot was obstructed by the grocery bags in her cart, thereby preventing her from noticing the defect. She also alleged that the incident occurred on a holiday and that the parking lot was "very busy." In fact, she testified that a vehicle was driving by her as the incident occurred and that she was watching for oncoming traffic as she walked. See *St. Martin*, 2014 IL App (2d) 130505, ¶ 19 (recognizing "heavy foot traffic, distraction, or congestion" as potential aggravating circumstances). Finally, she notes that the incident occurred in a commercial space and that the incident did not occur in an area with assigned parking spaces. See *Barrett*, 2017 IL App (1st) 170168, ¶ 35.

¶ 44    However, even if we assume for the sake of analysis that plaintiff set forth sufficient evidence of aggravated circumstances vis-à-vis the *de minimis* rule, summary judgment would otherwise be appropriate. See *DiCosola*, 2015 IL App (1st) 150007, ¶ 8 (we may affirm on any grounds supported by the record). While a plaintiff need not prove her entire case during a summary judgment proceeding, she must present some evidence to support each element of her cause of action. *Finch v. Illinois Community College Board*, 315 Ill. App. 3d 831, 835 (2011). "If the plaintiff fails to establish any element of h[er] claim, summary judgment is appropriate. *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335 (2004). Here, plaintiff failed to present any evidence that defendant knew or reasonably should have known of the dangerous condition and the risk. See *id.*

15

¶ 45    The record is devoid of any evidence that defendant was aware or reasonably should have been aware of the pothole in the parking lot prior to plaintiff's fall on June 21, 2020. There is no evidence that plaintiff, or anyone else for that matter, reported the pothole prior to the incident. Indeed, the earliest evidence of defendant's knowledge of any parking lot in the record shows it arising nearly three months *after* plaintiff's incident, when she sent her September 10, 2020, letter to the managers of the Elmhurst Mariano's to inform them generally of the "pretty destroyed surface" of the parking lot. While this post-incident letter noted the defects near the front of the store, she did not state with specificity the location of the defects, nor did she attach any photographs to the letter. She also expressed her irritation at having to "go around" the cracks and holes in the parking lot but did not indicate that she fell or was injured due to the condition of the parking lot. Indeed, it was not until plaintiff's second letter to the managers on June 27, 2021, more than one year after the incident, that she disclosed that the condition of the parking lot caused her to fall and become injured. Again, these letters all came after plaintiff's incident. Ultimately, plaintiff provided no evidence that defendants knew or reasonably should have known of the dangerous condition and the risk allegedly presented by the pothole prior to plaintiff's incident.

¶ 46    Plaintiff's allegations and evidence, when viewed in the light most favorable to her, do not support a conclusion or inference that defendant knew or should have known of the pothole or any defect in the parking lot *prior to* the incident. Therefore, the court properly granted summary judgment in defendant's favor. See *Dardeen*, 213 Ill. 2d at 335 ("If the plaintiff fails to establish any element of h[er] claim, summary judgment is appropriate.")

¶ 47                                    III. CONCLUSION

¶ 48    For the reasons stated herein, we affirm the judgment of the circuit court of Du Page County.

16

¶ 49       Affirmed.